NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 14 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSE HERIBERTO PEREZ; KATHERINE
VANESSA PEREZ-SOLIS; JIMENA
JOSABETH PEREZ-SOLIS; MARIA
LUISA SOLIS DE PEREZ,

Petitioners,

v.

PAMELA BONDI[*], Attorney General,

Respondent.

No. 23-3782

Agency Nos.
A220-593-560
A220-149-672
A220-149-693
A220-149-667

MEMORANDUM[**]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 12, 2025[***]
Pasadena, California

Before: TALLMAN, IKUTA, and R. NELSON, Circuit Judges.

---

[*]     Pamela Bondi is substituted as Attorney General pursuant to Fed. R. App. P. 43(c).

[**]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[***]     The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

Petitioners are Katherine Vanessa Perez-Solis (Perez-Solis), her father Jose Heriberto Perez, her mother Maria Luisa Solis De Perez, and her sister Jimena Josabeth Perez-Solis—all natives and citizens of El Salvador who entered the United States without admission or parole on August 18, 2021. Petitioners seek review of a Board of Immigration Appeals (BIA) decision dismissing their appeal of an immigration judge's (IJ) order denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

We review the agency's underlying factual findings for substantial evidence. *Salguero Sosa v. Garland*, 55 F.4th 1213, 1217 (9th Cir. 2022); *see also Reyes v. Lynch*, 842 F.3d 1125, 1137–38 (9th Cir. 2016). Under that standard, the agency's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006) (quotation omitted). Because the BIA largely reiterated what the IJ found and agreed with its determinations, the panel reviews those portions of the IJ's decision along with any additional reasons provided by the BIA. *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018) ("Where . . . the BIA agrees with the IJ's reasoning, we review both decisions.").

We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.

1. Petitioners' asylum and withholding claims fail because substantial evidence supports the BIA's determination that their persecution had no nexus to

any protected ground. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017); *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010); *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1019 (9th Cir. 2023). The IJ discussed in detail Mara 18's—a Salvadoran gang—sexual harassment and assault of Perez-Solis, as well as the gang's subsequent extortion attempt. But, based on country reports and other evidence, the IJ found that this criminality was motivated by the gang's general victimization of Salvadoran society writ large and a criminal motive to recruit Perez-Solis for criminal and sexual gratification purposes. Petitioners' desire to avoid indiscriminate criminal violence "bears no nexus to a protected ground." *Zetino*, 622 F.3d at 1016. Thus, the agency's determination that Petitioners were the victims of ordinary criminal violence forecloses a nexus between the violence and any of Petitioners' asserted particular social groups and political opinions. *See id.*; *cf. Singh v. Holder*, 764 F.3d 1153, 1159 (9th Cir. 2014).

Properly understood, the BIA applied de novo review to the nexus determination, and clear error to the IJ's factual findings. *See Umana-Escobar v. Garland*, 69 F.4th 544, 551–53 (9th Cir. 2023). The BIA correctly noted at the outset that it reviews facts for clear error and law *de novo*. Right after it began its nexus discussion, it cited the factual findings necessary to make a nexus determination. Then, over the next four paragraphs, the BIA consistently applied the "clear error" standard of review to those findings. But when reaching its legal conclusion, the

BIA did not make a clear error finding. Instead, the BIA reviewed the nexus determination de novo and "agree[d] with the [IJ's] conclusions" and, later, stated that "[w]e agree with the [IJ's] ultimate conclusion."

Finally, the IJ and BIA did not need to discuss every piece of evidence. [1] *See Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006); *see also Villegas Sanchez v. Garland*, 990 F.3d 1173, 1183 (9th Cir. 2021). In fact, they are presumed to have reviewed all the evidence. *Larita-Martinez*, 220 F.3d at 1095–96. To succeed here, Petitioners needed to show that the agency misstated the record or ignored potentially dispositive evidence. *See Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011). Petitioners do not meet their burden.

The expert testimony Petitioners complain the agency did not review provided color on the nature of gang power in El Salvador (explaining that gangs desire to crush resistance) and El Salvador's culture of violence towards women and girls. The agency discussed both. It acknowledged Mara 18's control of Petitioners' neighborhood, the extreme violence that women face in Guatemala (including sexual violence and "disappear[ing]" women), Petitioners' fears that they could not return

---

[1] This argument is likely waived. Petitioners should have brought a due process claim if they wished to challenge the agency's evidentiary review of their asylum and withholding claims. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000). They do not do so here. *See Zango, Inc. v. Kapersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.").

to El Salvador because of gang control and the government's inability to control the gangs, and the ill treatment of women in El Salvador. These touch upon both areas Petitioners claim the agency overlooked.

Nor would specific citation to the evidence be "dispositive" to the BIA's conclusion, *Cole*, 659 F.3d at 772: "Here, it is clear from the Respondents' applications they fear they will be victims of general crime and violence in El Salvador." The IJ came to this conclusion only after going through the evidence of widespread gang criminality and control over areas of El Salvador and gang abuse of wide sectors of society, including women. There is no indication, then, that the evidence Petitioners demand the agency make specific reference to would disturb the conclusion that this episode of criminality was driven by the gang's routine practice of targeting all sectors of society. *See Larita-Martinez*, 220 F.3d at 1095 (due process claims require a showing of prejudice).

2. Substantial evidence also supports the finding that El Salvador does not acquiesce to gang violence. The IJ acknowledged that laws against sexual violence are not "effectively enforced." But it noted that the law "criminalizes rape" and "requires prosecution whether or not the victim presses charges." And the government also implemented a nationwide protocol that provides significant assistance to victims of sexual violence. So the IJ properly found that the government of El Salvador was "attempting to protect the attacked."

5                                                                    23-3782

The same was true for the other Petitioners. They filed a complaint with the Salvadoran police. And even though the culprits were broadly defined in the complaint, the National Police still forwarded the complaint to the attorney general's office. Yet Petitioners departed El Salvador "a mere seventeen . . . days after filing the report." Accordingly, the IJ found, with substantial evidentiary support, that "[t]his is not a case wherein the applicant affirmatively sought protection from law enforcement in her home country but was rebuked."

Again, Petitioners protest that the agency did not reference their expert reports, which assert that Mara 18 and other gangs practically rule as quasi-sovereigns in parts of El Salvador. Petitioners insist that the agency ignored that expert evidence. Again, we disagree.

There is no "indication that the BIA [and IJ] did not consider all of the evidence before" them. *Cole*, 659 F.3d at 771–72. At the hearing, the IJ gave the evidence "appropriate weight." The IJ listed these exhibits in the record. And it stated that, "[*w*]*hether specifically mentioned or not, the Court has considered all evidence contained in the record to reach its decision*." While it did not cite the exhibits by name, the IJ's analysis touched upon similar evidence, which it rebutted.

For instance, as it relates to this issue, Petitioners complain that their evidence shows that gangs "collaborate with corrupt governmental officials" and often operate with "more power than traditional state actors." But the 2020 country report for El

Salvador in the administrative record, which no one contests the agency relied upon heavily, touches upon those very issues.

Moreover, the evidence relied upon by the IJ rebuts the expert testimony. The IJ acknowledged that "the Salvadoran government has not been completely successful at quelling gang violence or crime in the country." But it found that Petitioners feared private actors. And it noted that the government of El Salvador is utilizing extraordinary emergency powers to turn the military against the gangs. These findings, supported by substantial evidence, squarely address the redundant evidence Petitioners complain the agency ignored.

"Given the lack of evidence supporting a claim of torture by the government, and the evidence demonstrating that El Salvador does not acquiesce to gang violence, substantial evidence supports the agency's denial of CAT relief." *Amaya v. Garland*, 15 F.4th 976, 987 (9th Cir. 2021).

**PETITION DENIED.**